FLOYD PELTON, Respondent, *v.* THE WESTCHESTER FIRE INSURANCE COMPANY, Appellant.

*It seems,* that one in possession of lands under a contract of purchase by him, and of sale by the owner of the fee, is the owner in equity; a statement therefore in an application for a policy of insurance that he is the owner is not untrue; nor is the omission to state the nature of the interest a breach of a condition in the policy, forfeiting it in case the interest of the assured is other than "the entire, unconditional and sole ownership," and it is not so represented to the company.

The facts that by the contract under which the insured holds, it is provided that the vendor may declare it forfeited in case of failure to perform on the part of the vendee, and that at the time of the issuing the policy the vendee was in default, do not render the policy invalid, where it appears that the vendor had not declared the contract forfeited, but still recognized the rights of the vendee under it.

(Argued April 11, 1879; decided April 25, 1879.)

THIS action was upon a policy of insurance issued by defendant to one Brown, loss, if any, made payable to plaintiff "as collateral, as his interest may appear." (Reported below, 13 Hun, 23.)

The material point discussed, and the facts relating thereto, are set forth in the following extract from the opinion:

"The other defense is that at the time Brown procured the insurance he represented —' he was the owner of the premises; that there was no lien or mortgage thereon, and but a small portion of the purchase money was unpaid,' or as elsewhere in the answer stated 'that the premises were nearly paid for'— that it was stated in the contract of insurance that if the interest of the assured was any other than the entire unconditional and sole ownership of the premises it must be so represented to said company or that the said policy should be void. It is then alleged that Brown had not such ownership, 'but that he was in possession of the premises under a contract to purchase the same; that he had not paid pursuant to its terms by reason whereof the contract was forfeited and Brown had no interest therein.' The evidence disclosed that Brown did hold under a contract executed to him by the plaintiff (who owned the fee) dated May 3, 1872, by the terms of which the plaintiff agreed to sell Brown the premises in question, and Brown agreed to construct a building thereon worth at least $1,000, to keep the same insured and assign the policy to plaintiff, and pay plaintiff $1,330 for the premises as follows: $50 on the 1st of May, 1873, $430 on the 1st day of May, 1874, and the residue in four equal annual payments thereafter, and it was provided that on failure to perform the contract on the part

of Brown, Pelton (the plaintiff) might declare it forfeited. It was conceded that Brown was in possession of the premises under the contract, had built the house and made a part of the first payment. Pelton had not declared the contract forfeited, but on the contrary recognized the rights of Brown under the contract and made no claim in opposition thereto.

"No written application appears to have been made for insurance, but the agent testified that the policy in question was a renewal of one issued the year previous, 1872, and says : ' I inquired if he owned the premises ; ' his answer was ' yes, I own it.' No inquiry seems to have been then made as to the character of the title, but the agent asked 'if there was any mortgage on the premises,' and Brown said ' no,' but added, ' I owe a small amount on it for material and labor contracted in building,' and in the policy the building is described as ' his.' This was not an untrue statement as to his title. From the moment the contract was executed and delivered Brown was, in equity, its owner. (*Moore* v. *Burrows*, 34 Barb., 173; *Hathaway* v. *Payne*, 34 N. Y., 103; *Cogswell* v. *Cogswell*, 2 Edw. Ch. Rep., 238.) He had a real substantial proprietary interest in the property ; in the event of his death it would descend to his heir and he could devise it by his will. In *Paine* v. *Meller* (6 Vesy Jr., 349), Lord ELDON says : ' If the party by the contract has become in equity the owner of the premises they are his to all intents and purposes ; they are vendible as his ; chargeable as his ; capable of being incumbered as his ; they may be devised as his ; they may be assets ; and they would descend to his heir,' and while he was living were insurable as ' his.' " (*Shotwell* v. *Jefferson Ins. Co.*, 5 Bosw., 247–257; *Acer* v. *Merchants' Ins. Co.*, 57 Barb., 68; *Chase* v. *Hamilton Mutual Ins Co.*, 22 Barb., 527; *Tyler* v. *Ætna Fire Ins. Co.*, 12 Wend., 513.)

"It is not necessary however to pursue this inquiry further for the evidence falls far short of making out as matter of law that there was any untrue representation by Brown much less that he made it as alleged in the answer ' falsely and fraudulently,' for there is another reason why the trial

court was not required to hold that the defense was made out. The trial court may well have held upon the pleadings and evidence that the agent of the company was informed before the issue of the policy in question that Pelton, the plaintiff, did have an interest in the premises and that Brown's title was by contract. The allegation in the answer is that Brown represented he was the owner of the premises and that ‘they were nearly paid for;’ and, again, that ‘but a small portion of the purchase-money was unpaid,’ and the plaintiff's agent whose evidence is above referred to, testified on cross-examination that in the original policy of 1872 there was written, October 8, 1872, ‘loss, if any, payable to Floyd Pelton as collateral, as his interest may appear,’ and that by an error caused by transcribing from an uncorrected entry in the books of the office the word ‘mortgagee’ appeared in the policy of 1873 instead of ‘collateral;’ that after the first policy was issued and before the renewal, he ‘had notice that Pelton had an interest in the property;’ that when the original application was made for insurance he did not see the contract, but says ‘at a later day I knew of it.’ ‘The indorsement is evidence of it.’ The original policy bears date September 1, 1872, and the indorsement October 8, 1872, and was made in pursuance of Pelton's request and notice by letter; after that and in renewal of the policy of 1872 the one in question was issued. This notice to the agent was knowledge in the principal and they cannot now assert ignorance for the purpose of defeating on technical grounds the payment of a claim which for aught that appears in the case before us is altogether just. (*McCullock* v. *Norwood*, 58 N. Y., 562; *Van Schoieck* v. *Niagara Fire Ins. Co.*, 68 id., 434.)

" We have not overlooked the statement made by the appellant's counsel that ‘ different companies make use of different forms for insurance policies varying from time to time in their terms and conditions as the decisions of the courts respecting their liability render these changes necessary,’ but in the policy before us we find the elements of a valid contract, to the performance of which the plaintiff was entitled.

" The judgment should be affirmed."

*A. C. & T. A. Niven* for appellant.

*John J. Linson* for respondent.

DANFORTH, J., reads for affirmance.
All concur.
Judgment affirmed.